IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

LAIRD O'DELL,

      Plaintiff,

v.                          CASE NO. 2:10-cv-00046

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff, Laird O'Dell (hereinafter referred to as "Claimant"), protectively filed an application for DIB on June 30, 2005, alleging disability as of August 15, 2004, due to fibromyalgia, osteoarthritis, degenerative disc disease, high blood pressure and depression.[1]  (Tr. at 14, 368-73, 480, 483.)  The

---

[1]  A previous decision dated March 25, 2005, found that Claimant was not entitled to DIB.  (Tr. at 47-58.)

claim was denied initially and upon reconsideration.  (Tr. at 14, 338-42, 343-45.)  Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 37.)  A hearing was held on January 10, 2008.  (Tr. at 800-32.)  A supplemental hearing was held on November 19, 2008.  (Tr. at 768-799.)  By decision dated January 21, 2009, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 14-28.)  The ALJ's decision became the final decision of the Commissioner on November 20, 2009, when the Appeals Council denied Claimant's request for review.  (Tr. at 7-9.)  On January 15, 2010, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 404.1520 (2009).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 404.1520(a).  The first inquiry under the sequence is whether a claimant is currently

engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2009). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant

3

satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 16.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of osteoarthritis, fibromyalgia, back impairment, left knee impairment, shoulder impairment, depression and anxiety. (Tr. at 16.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 18.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 20.) As a result, Claimant cannot return to his past relevant work. (Tr. at 26.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as cashier, price marker, and mail clerk, which exist in significant numbers in the national economy. (Tr. at 27.) On this basis, benefits were denied. (Tr. at 27.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not supported by substantial evidence.

Claimant's Background

Claimant was forty-nine years old at the time of the first administrative hearing and fifty at the time of the supplemental administrative hearing. (Tr. at 804.) Claimant completed the eleventh grade and earned his GED. (Tr. at 805.) In the past, he worked as a mold caster and as a laborer. (Tr. at 793.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will discuss it further below as necessary.

Plaintiff originally alleged onset as of August 15, 2004, but then moved to amend his onset date to August 29, 2006, at the administrative hearing. Arguably, the period prior to March 25,

2005, the date of the prior ALJ's decision, has been previously adjudicated, but the court will summarize the evidence of record from the prior application because the medical records relate to the time period during which Claimant alleged disability and because the ALJ relied on some of this evidence in his decision.

Evidence considered by the Previous ALJ

On February 24, 2004, EMG and nerve conduction studies of the left upper extremity were within normal limits except for prolongation of the sensory latency to the thumb compassed to index and middle finger suggestive of partial damage to the digital branch of the median nerve to the thumb.  (Tr. at 208.)

On April 27, 2004, an MRI of Claimant's lumbar spine showed no evidence of significant disc protrusion or disc herniation.  There was mild stenosis of ten neural foramina bilaterally at the L5-S1 level.  The examination was otherwise normal.  (Tr. at 211.)

An MRI of the left knee on April 22, 2004, showed a tear of the medial meniscus.  (Tr. at 213.)

X-rays of the left shoulder on January 10, 2003, showed mild degenerative changes involving the left acromioclavicular joint. (Tr. at 231.)

From April 30, 2004, through May 11, 2004, Claimant underwent physical therapy for a possible meniscus tear of the left knee. Claimant had previously had a tear in this knee.  (Tr. at 248-49.)

The record includes treatment notes from Thomas W. Howard,

M.D. dated February 21, 2003 through September 13, 2004. (Tr. at 250-60.) Dr. Howard treated Claimant for fibromyalgia and osteoarthritis. On March 25, 2004, Claimant complained of widespread pain and poor sleep. Prednisone did not help. Claimant had "widespread tender points compatible with fibromyalgia. There is no active synovitis in joints." (Tr. at 253.) On April 4, 2004, Claimant returned with the same symptoms. Claimant was on leave of absence from work. Claimant had widespread tender points compatible with fibromyalgia. There was no swelling or inflammation in any joint area. Claimant was taken off methotrexate and steroids and agreed to discuss his anti-depressant treatment with Dr. Newell. Dr. Howard felt that Claimant would benefit from further treatment of depression. (Tr. at 252.) On May 12, 2004, Claimant reported an improvement in his symptoms. Klonopin at bedtime improved his sleep. Prozac and Bextra also were helping. Dr. Howard's examination revealed tender points compatible with fibromyalgia. Range of motion was good in his joints. Strength and reflexes were normal. (Tr. at 251.)

On August 5, 2004, James K. Egnor II, M.D., a State agency medical source, completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform light work, with occasional postural limitations, limitations in feeling in the left hand and that he should avoid extreme cold and vibration due to pain. (Tr. at 266- 70.)

On August 25, 2004, Rosemary L. Smith, Psy.D., a State agency medical source, completed a Psychiatric Review Technique form and opined that Claimant's mental impairments were not severe. (Tr. at 275-88.)

The record includes treatment notes from the Fayette Clinic dated May 27, 2004, through September 21, 2004. (Tr. at 291-322.) On May 27, 2004, Ryan D. Newell, D.O. diagnosed fibromyalgia, history of psoriatic arthritis. (Tr. at 296.) On June 1, 2004, Dr. Newell noted that Claimant was off work due to severe fibromyalgia. He had tried several work options, modified work and limited hours, all without success. Dr. Newell planned to schedule an appointment for Claimant with a psychiatrist. (Tr. at 295.) On July 8, 2004, Dr. Newell saw Claimant to fill out paperwork to reauthorize continued time off work. Claimant described his pain as debilitating with severe back, shoulder and diffuse joint pain. Dr. Newell diagnosed fibromyalgia and recommended off work status. He encouraged Claimant to exercise daily and to continue his medications. (Tr. at 294.)

On July 22, 2004, Claimant again returned to have papers filled out for long term disability. Claimant had back pain, arthralgia and depression. Dr. Newell's assessment was fibromyalgia, history of psoriatic arthritis and hypertension. Dr. Newell wrote a letter on Claimant's behalf so that Claimant could qualify for long term disability. (Tr. at 293.) On August 25,

2004, Claimant reported that his left shoulder pain was worse over the past few weeks.  (Tr. at 292.)

On October 22, 2004, Marcel G. Lambrechts, M.D., a State agency medical source, completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform light work with occasional postural limitations, that Claimant had limitations in handling and fingering, and that he should avoid concentrated exposure to extreme cold, heat, vibration and hazards. (Tr. at 323-27.)

On December 9, 2004, Dr. Newell completed a Medical Assessment of Ability to do Work-Related Activities (Physical) on which he opined that Claimant has lifting limitations because of his fibromyalgia.  He noted that Claimant failed a return to work trial with a ten pound limit.  He opined that Claimant could stand for two hours out of an eight-hour workday, two hours uninterrupted and sit for only two hours without interruption.  He opined that Claimant could never climb, stoop, kneel or crawl and that he could occasionally balance and crouch.  Dr. Newell further opined that Claimant's ability to reach, handle, feel and push/pull were affected by his chronic pain from fibromyalgia and that Claimant had restrictions related to moving machinery, temperature extremes, humidity and vibration.  Dr. Newell wrote that Claimant demonstrated good range of motion and ambulation but that he moves slowly and with pain.  (Tr. at 332-35.)

Evidence Submitted with the Current Application

The record includes the December 9, 2004, Assessment from Dr. Newell, as well as additional treatment notes dated March 21, 2003, through June 30, 2003.  (Tr. at 524-60.)  Many of the treatment notes are duplicative of those summarized above.  On September 10, 2004, Claimant returned to have insurance papers filled out. Claimant was interviewed and reported his pain was chronic.  He planned to see Dr. Howard for fibromyalgia and psoriatic arthritis in the next week.  Claimant was alert, active and pleasant, but ambulated and transferred slowly, without assistance, but with difficulty.  Dr. Newell completed insurance papers for Claimant. (Tr. at 537.)

On November 29, 2004, Claimant, returned to Dr. Newell for disability forms to be completed.  Claimant reported that he continued to be treated by Dr. Howard, but without much relief. Claimant was alert and active.   He ambulated and transferred without assistance, but did so slowly and with rigidity.  (Tr. at 536.)  On December 9, 2004, Claimant continued to complain of fibromyalgia.  Dr. Newell's examination was largely unchanged.  He filled out forms recommending disability on the basis that "he has failed a return to work, modified with a 4 hours per day working and carrying less than 10 lbs. Per day and he clearly demonstrated that he could not do this."  (Tr. at 535.)  On February 3, 2005, Claimant received injections for arthritis.  (Tr. at 534.)  On

10

April 20, 2005, Roberta A. Durrett, C-FNP noted anxiety symptoms. (Tr. at 533.)  On June 30, 2005, Claimant presented with low back pain.  Lumbar range of motion showed decreased flexion, decreased extension.  Ms. Durrett diagnosed strain/sprain.  (Tr. at 524.)

On August 26, 2005, M. Khalid Hasan, M.D. conducted a psychiatric evaluation.  Claimant complained of anxiety and depression for four years.  Claimant last worked one year ago, but had to quit due to fibromyalgia, chronic back pain, degenerative discs, osteoarthritis with increased anxiety and depression.  Dr. Hasan diagnosed major depression, recurrent, moderate to moderately severe in nature, adjustment disorder with anxious and depressed mood secondary to physical illness and situational factors on Axis I.  He made no Axis II diagnosis.  He rated Claimant's GAF at 50. He recommended Effexor and Valium.  (Tr. at 605.)

On August 31, 2005, Maurice Prout, Ph.D., a State agency medical source, completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform light work, with occasional postural limitations, that he should avoid concentrated exposure to extreme cold, vibration and hazards and even moderate exposure to extreme heat.  (Tr. at 606-13.)

The record includes a re-examination evaluation from Kominsky Chiropractic Center dated September 12, 2005, indicating that Claimant is unable to work for several months due to severe neck and back pain.  (Tr. at 616-17.)

11

The record includes additional treatment notes from Dr. Hasan dated September 6, 2005, and October 4, 2005. (Tr. at 619-20.) On September 6, 2005, Claimant continued to do fair. Claimant's depression and anxiety were under much better control. Dr. Hasan's diagnosis was major depression, recurrent moderate-to-moderate severe in nature. (Tr. at 620.) On October 4, 2005, Dr. Hasan noted that Claimant continued to "do fair." (Tr. at 619.) Claimant stated that Effexor helped, but that he still gets a little depressed and anxious. Claimant's wife reported that although he was better, he was still depressed and anxious. On a 0 to 10 point scale, Claimant rated his depression at 4. Dr. Hasan increased Claimant's Effexor. Dr. Hasan's original diagnoses remained the same. (Tr. at 619.)

On November 22, 2005, Misti Jones-Wheeler, M.S. examined Claimant at the request of the State disability determination service. Ms. Jones-Wheeler diagnosed depressive disorder, not otherwise specified and generalized anxiety disorder on Axis I and made no Axis II diagnosis. (Tr. at 624.)

On December 29, 2005, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant did not have a severe mental impairment. (Tr. at 626-39.)

On April 24, 2006, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant's mental impairments were not severe. (Tr. at 640-53.)

The record includes treatment notes from Curtis H. Thomas, D.O. and others dated February 14, 2006, March 14, 2006, May 3, 2006, May 18, 2006, May 23, 2006, and May 25, 2006. (Tr. at 655-62.) On February 14, 2006, Dr. Thomas treated Claimant for degenerative disc disease of the lumbar spine, shoulders and knees confirmed by x-ray and MRI, hypertension and fibromyalgia. Claimant received trigger point injections for his shoulder pain. On May 18, 2006, Karen Kutchera, C-FNP examined Claimant, and he complained that he was not doing well on his medication for arthritic pain and fibromyalgia. Claimant had had an acute fibromyalgia flareup for the past three to four weeks and was "absolutely miserable." (Tr. at 658.) Ms. Kutchera recommended manipulation and that he keep a trigger point therapy appointment scheduled for the following week. Claimant had significant Trapezius tenderness, also trigger points for fibromyalgia were all present. Claimant also had some lumbosacral paraspinous tenderness as well. (Tr. at 658.) On May 23, 2006, Claimant saw Janis Williams, D.O. with complaints of severe back pain that had become worse over the past four weeks with difficulty on urination. She diagnosed acute prostatitis, acute exacerbation of chronic low back pain, fibromyalgia and family history of colon cancer. (Tr. at 659.) Claimant had some muscle tightness in the entire paravertebral musculature area and muscle tightness in the gluteus maximus muscles and tenderness upon palpation over the S1 joints as

13

well.  Claimant was prescribed stronger pain medication.  (Tr. at
659.)  On May 25, 2006, Claimant saw Mariana Didyk, PA-C for
complaints of low back, shoulder and neck pain.  Ms. Didyk's
impression was low back pain.  Claimant had slightly decreased
range of motion to about 90 degrees.  He had some pain with side
bending particularly to the left.  The remainder of the back
examination was normal.  (Tr. at 661.)

On June 16, 2006, Serafino S. Maducdoc, Jr., M.D. examined
Claimant at the request of the State disability determination
service.  Claimant reported a history of arthroscopic surgery of
the left knee and surgery for a trigger finger in the left hand.
He had carpal tunnel surgery on both hands.  Dr. Maducdoc's
impressions were degenerative arthritis of the knees, ankle,
shoulders and back, possibly fibromyalgia and hearing loss of the
right ear (?).  (Tr. at 665.)  Dr. Maducdoc felt that Claimant
should see a neurologist.  (Tr. at 666.)

On July 20, 2006, a State agency medical source, Uma Reddy,
M.D., completed a Physical Residual Functional Capacity Assessment
and opined that Claimant could perform medium work and should avoid
concentrated exposure to vibration and hazards.  (Tr. at 670-77.)

On August 29, 2006, Dr. Janis Williams completed a Physical
Capacities Evaluation on which she opined that Claimant could sit
one hour and stand/walk one hour in an eight-hour day with a need
to alternate sitting and standing, that Claimant had limitations in

14

fine manipulation, and repetitive motion, that Claimant could lift 11 to 20 pounds with pain, and 0 to 10 pounds frequently, that he could occasionally climb, stoop, kneel, crouch, and reach above shoulder level, and that Claimant should never balance or crawl. Finally, she opined that Claimant had a total restriction involving unprotected heights, a severe restriction involving moving machinery, a mild restriction to exposure to marked changes in temperature and humidity and a moderate restriction in driving automotive equipment. Dr. Williams opined that Claimant's medication affects his attention and concentration severely and that Claimant is in constant pain. She wrote that although medications help, they do not alleviate all of Claimant's pain, and the pain medications he takes are sedating. (Tr. at 678-79.)

The record includes treatment notes and other evidence from Dr. Williams and others dated August 4, 2006, August 31, 2006, November 9, 2006, and December 1, 2006. On August 4, 2006, Claimant reported increased pain in his neck and low back. On examination, Claimant had muscle knots in the low lumbar spine that are tender to palpation. There was some muscle tightness noted in the upper shoulder region as well. Dr. Williams' impression was osteoarthritis and chronic pain secondary to muscle spasms and degenerative lumbar disc disease. She recommended an MRI. (Tr. at 684.)

Claimant underwent an MRI on August 13, 2006, which showed

15

mild spinal stenosis at multiple levels with mild bulging of disc material at L3-4, L4-5 and L5-S1. There were no signs of herniated disc material. (Tr. at 682.)

On August 31, 2008, Dr. Williams discussed the results of Claimant's MRI and diagnosed degenerative disc disease, spinal stenosis, bulging disc at L4-L5, fibromyalgia, hypertension and external hemorrhoids. (Tr. at 681.)  On August 31, 2006, Dr. Williams completed a form indicating that Claimant has severe pain precluding attention and concentration required for even simple, unskilled work tasks. She wrote that Claimant was "in constant pain, medications help but do not alleviate all of it [and] the pain meds he is on are sedating[.]" (Tr. at 680.)

The record includes additional treatment notes from Claimant's chiropractor dated October 2, 2006, through May 29, 2007. (Tr. at 691-93, 695-96.)

The record includes a treatment note from New River Health Association dated April 30, 2007. Claimant complained of low back and shoulder pain. Claimant was taking Hydrocodone for pain and requested a refill of Valium. Claimant received a shot of Kenalog. (Tr. at 694.)

On July 27, 2007, Dr. Thomas completed a Physical Capacities Evaluation and opined that Claimant could sit and stand/walk for one hour per day and that he required a sit/stand option. He stated that Claimant could not engage in repetitive motion in the

left or right hand because of carpal tunnel syndrome.  (Tr. at 697.)  He opined that Claimant could occasionally lift up to 10 pounds, that he should never climb, crouch or crawl and that he could occasionally stoop, kneel and reach above shoulder level. He further opined that Claimant would have a moderate limitation in exposure to marked changes in temperature and humidity.  Finally, he stated that Claimant has fatigue and a "lot [of] pain and associated depression." (Tr. at 698.)  However, he stated that the fatigue was not disabling so long as Claimant worked in a sedentary position.  (Tr. at 698.)  He stated that Claimant has pain caused by generalized osteoarthritis with degenerative disc disease of the lumbar spine and that the pain was disabling.   (Tr. at 699.)

The record includes evidence from New River Chiropractic dated November 2, 2007, through October 20, 2008, including a Physical Capacities Evaluation and a Mental Effects of Pain questionnaire indicating that pain and medication side effects interfere slightly with Claimant's attention and concentration.  (Tr. at 717-27.)

The record includes treatment notes from Dr. Thomas and others at New River Health Association dated November 2, 2007, through October 17, 2008.  (Tr. at 700-16.)  On November 2, 2007, Claimant saw Dr. Thomas for follow up of major depression.  He reported his medication was not helping.  Claimant reported feelings of worthlessness and uselessness.  Claimant reported pain from fibromyalgia and arthritis.  Dr. Thomas stated that Claimant

17

"really does seem depressed and I'm anxious about him.  I think he needs to see a psychologist and then maybe Dr. Hasan."  (Tr. at 702.)  Dr. Thomas referred Claimant for mental health treatment. (Tr. at 702.)

On November 8, 2007, Gail Kinsey, M.A. examined Claimant.  She diagnosed major depression, severe, recurrent and chronic pain. She recommended counseling.  (Tr. at 701.)

On December 7, 2007, Claimant was examined for follow up of depression and degenerative arthritis.   Claimant was doing much better since his last visit after being placed on Cymbalta. Claimant was diagnosed with depression (improved) and degenerative arthritis and prescribed Cymbalta and Hydrocodone.  (Tr. at 716.)

On December 10, 2007, Ms. Kinsey saw Claimant in follow up from his previous appointment.  His symptoms had improved.  His affect was broad and his mood was normal and euthymic.  (Tr. at 704.)

On March 21, 2008, Claimant came in with complaints related to fibromyalgia and myositis in the upper dorsal area and shoulders. Dr. Thomas administered an injection. (Tr. at 715.)  On June 11, 2008, Claimant complained of pain in his shoulders and joints. Lortab was not helping his pain.  Dr. Thomas explained the complications that can arise from increasing Claimant's medication though he did increase his Lortab.  (Tr. at 711.)  On September 5, 2008, Claimant returned to Dr. Thomas with a flare up in his

fibromyalgia and myositis.  Most of the pain was in his shoulders.
Dr. Thomas found that "[a]t the point of maximum tenderness there
are some palpable nodules.  He has some muscle spasms.  The trigger
points were injected with 1 cc of Depo Medrol and 1 cc of Marcaine,
0.5 in each trigger point."  (Tr. at 709.)

On October 17, 2008, Dr. Thomas completed a physical effects
of pain questionnaire in which he indicated that Claimant suffered
from pain, that there was a reasonable medical basis for that pain,
and that it was disabling because he could stay in the same
position but only for short periods of time.  (Tr. at 708.)  Dr.
Thomas completed a Physical Capacities Evaluation on October 10,
2008, on which he opined that Claimant could sit and stand/walk for
two hours out of an eight-hour workday, that he would need a
sit/stand option, that Claimant could occasionally lift 11 to 20
pounds, that he should never climb, stoop, kneel, crouch or crawl
and could never balance or reach above shoulder level, that he has
total restriction in activities involving unprotected heights, and
moderate restriction involving exposure to marked changes in
temperature and humidity and exposure to dust, fumes and gases.
Dr. Thomas opined that Claimant was totally disabled due to
degenerative arthritis and disc disease and depression.  (Tr. at
707.)  He further opined that Claimant's pain moderately affected
his attention and concentration.  (Tr. at 706.)

19

Evidence at the Administrative Hearings

At the administrative hearings, physical and mental medical experts testified. At the first administrative hearing, Judith Brendemuehl, M.D. testified that Claimant had generalized osteoarthritis and fibromyalgia, that these impairments do not meet or equal a listing, and that Claimant can perform light work with occasional climbing of ramps/stairs, or climbing of ropes, ladders or scaffolds, no exposure to moving machinery or hazards, and that Claimant should avoid concentrated exposure to vibration. (Tr. at 819-23.) Dr. Brendemuehl testified that in May of 2006, Claimant began having more pain related to his fibromyalgia and that his usual steroid injections were not working. (Tr. at 825.) The first hearing was continued after Claimant's counsel agreed to obtain additional evidence related to his mental condition. (Tr. at 829-30.)

At the supplemental hearing, Jeffrey T. Boggess, Ph.D. testified that Claimant has major depressive disorder and some form of anxiety, but that these impairments did not meet the listings. (Tr. at 773.) Dr. Boggess opined that Claimant has mild limitations in activities of daily living and social functioning, moderate limitations in concentration, persistence and pace and no episodes of decompensation. (Tr. at 774.) Dr. Boggess felt that Claimant was limited to "relatively simple tasks." (Tr. at 774.) After hearing testimony from Claimant, Dr. Boggess modified his

20

testimony to find that Claimant had a moderate limitation in social functioning, such that he would be limited to occasional contact with the general public or co-workers on the job.

Dr. Brendemuehl testified that the only change in Claimant's condition was that in reviewing records from 2008, "the problems primarily seem to be located in the shoulders and upper extremities." (Tr. at 783.) As a result, Dr. Brendemuehl restricted Claimant to only occasionally reaching overhead. (Tr. at 783.) Dr. Brendemuehl also opined that Claimant should never kneel or crawl and should only occasionally crouch. (Tr. at 784.)

When asked about the assessments completed by Claimant's chiropractor and Dr. Thomas, Dr. Brendemuehl indicated that if Claimant had such limitations in sitting, she questions what he does the remainder of the day. (Tr. at 785.) When asked by the ALJ whether, upon review of the medical evidence of record, there was a basis for limiting Claimant to only being able to work several hours in an eight-hour workday, Dr. Brendemuehl testified that

> none of these RFC's reflect anything more than that and
> that's the only thing that I can say from this file, that
> the RFC's have been [consistent] in reflecting the fact
> that this gentleman apparently cannot sustain standing
> and walking for more than two hours total and the sitting
> is described as a maximum of three hours out of an eight
> hour day in any of the best RFC's.

(Tr. at 786.)

When asked again by the ALJ if there were "objective findings

to limit him to that extent," Dr. Brendemuehl stated "[y]es, sir, I think so."  (Tr. at 786.)   The ALJ asked Dr. Brendemuehl to identify the medical evidence supporting her opinion, and she did so.  (Tr. at 786-87.)   The ALJ then asked Dr. Brendemuehl, "I understand you're saying that the Claimant cannot work an eight hour day?" (Tr. at 788.)  In response, Dr. Brendemuehl stated that "again, I think it's a credibility issue.  What I'm saying is that I don't have that written into the record.  There's nothing that any of these RFC's have placed there as far as what happens to those additional hours and I don't think I'm in a position to read that into the record.  I think it's an issue as to whether or not his testimony is credible ...."  (Tr. at 788.)

Claimant's counsel then asked:

Q I'm a little bit confused because I thought that you were saying the records from March and September which talk about the trigger point and trigger point injections would support this residual functional capacity that Dr. Thomas completed for the two hours sitting and two hours standing?
A  It supports his increase[d] pain.  They've indicated that there's all there is, is two hours standing and three hours sitting, but they haven't indicated what the other three hours are done.

(Tr. at 789.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ misconstrued evidence of Claimant's fibromyalgia and failed to give appropriate weight to Claimant's treating source evidence; (2) the ALJ

erroneously evaluated Claimant's fibromyalgia, a disease documented by specific subjective complaints; (3) the ALJ misapplied <u>Albright v. Commissioner of Social Security</u>, 174 F.3d 473 (4th Cir. 1999); and (4) the ALJ failed to properly evaluate the Claimant's pain and subjective symptoms.  (Pl.'s Br. at 12-19.)

The Commissioner argues that (1) the ALJ reasonably afforded little weight to the opinions of Drs. Newell, Thomas and Williams; (2) substantial evidence supports the ALJ's determination that Claimant was not entirely credible; and (3) the ALJ properly addressed Claimant's claims of fibromyalgia. (Def.'s Br. at 11-20.)

In reply, Claimant argues that the Commissioner's objections to the opinions of Claimant's physicians are merely objections to the nature of fibromyalgia, the disease.  (Pl.'s Reply at 1-5.)

After Claimant's reply, the Commissioner filed a supplemental transcript.  (# 11.)

Plaintiff moved to file a supplemental reply and indicated he was generally satisfied that further argument was not needed, with the exception of one point.  Claimant points out that his amended date of onset of disability is August 29, 2006, but that nothing in the original transcript before the court mentioned the amended onset date.  (Pl.'s Surreply at 1-2.)

The Commissioner filed a surreply as well and argues that Claimant filed his brief without allowing the Commissioner to file the supplemental brief.  The Commissioner had suggested that

Claimant should seek an extension of the time for filing his brief until the filing of the supplemental transcript was filed, but Claimant declined to do so.  In addition, the Commissioner argues that other than a passing exchange between Claimant's counsel and the ALJ in which the ALJ acknowledged Claimant's request to amend the onset date, the ALJ never specifically amended the onset and adjudicated Claimant's claim with an onset date of August 15, 2004. The Commissioner argues that if Claimant wanted the Commissioner to reconsider the date, he should have sought reconsideration with the Appeals Council.  (Def.'s Surreply at 1-2.)

The court proposes that the presiding District Judge find that the ALJ's decision is not supported by substantial evidence because the ALJ failed to adequately weigh and explain the weight afforded the opinions of Claimant's treating sources in keeping with the applicable regulation at 20 C.F.R. § 404.1527(d)(2) (2009).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  See 20 C.F.R. § 404.1527(d)(2) (2009).  Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence."  Ward v. Chater, 924

F. Supp. 53, 55 (W.D. Va. 1996); <u>see also</u>, 20 C.F.R. §
404.1527(d)(2) (2009). The opinion of a treating physician must be
weighed against the record as a whole when determining eligibility
for benefits. 20 C.F.R. § 404.1527(d)(2) (2009). Ultimately, it
is the responsibility of the Commissioner, not the court to review
the case, make findings of fact, and resolve conflicts of evidence.
<u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted
above, however, the court must not abdicate its duty to scrutinize
the record as a whole to determine whether the Commissioner's
conclusions are rational. <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397
(4th Cir. 1994). Additionally, the regulations state that the
Commissioner "will always give good reasons in our notice of
determination or decision for the weight we give your treating
source's opinion." 20 C.F.R. § 404.1527(d)(2).

If the ALJ determines that a treating physician's opinion
should not be afforded controlling weight, the ALJ must then
analyze and weigh all the evidence of record, taking into account
the factors listed in 20 C.F.R. § 404.1527. These factors include:
(1) Length of the treatment relationship and frequency of
evaluation, (2) Nature and extent of the treatment relationship,
(3) Supportability, (4) Consistency, (5) Specialization, and (6)
various other factors. Additionally, the regulations state that
the Commissioner "will always give good reasons in our notice of
determination or decision for the weight we give your treating

source's opinion."   Id. § 404.1527(d)(2).   Finally, under §
404.1527(d)(1), more weight is given to an examiner than to a non-
examiner.  Section 404.1527(d)(2) provides that more weight will be
given to treating sources than to examining sources (and, of
course, than to non-examining sources).

In his decision, the ALJ determined that Claimant had the
severe impairments of osteoarthritis, fibromyalgia, back
impairment, left knee impairment, shoulder impairment, depression
and anxiety.  (Tr. at 17.)  In his residual functional capacity
finding, the ALJ found that Claimant could perform light work,
reduced by an ability to perform routine, repetitive tasks, a need
to avoid all exposure to hazards, a need to avoid concentrated
exposure to vibration, an occasional ability to reach above
shoulder level, an inability to kneel or crawl, an occasional
ability to crouch, balance, and climb ramps and stairs and an
inability to climb ladders, ropes and scaffolds.  (Tr. at 20.)

In making this finding, the ALJ explained that he afforded
significant weight to the opinions of Dr. Brendemuehl, Dr. Boggess,
and Dr. Lambrechts (the State agency medical source who rendered an
opinion about Claimant's physical abilities on the prior
application).  (Tr. at 24.)  The further stated that he afforded no
significant weight to the opinions of Dr. Smith, Dr. Prout or Dr.
Clark, State agency sources who opined that Claimant had no severe
mental impairments. (Tr. at 24-25.)  The ALJ afforded no weight to

the opinion of Dr. Reddy, a State agency source who opined that Claimant could perform medium work, instead relying on the opinion of Dr. Brendemuehl.  (Tr. at 25.)  The ALJ afforded some weight to the August 31, 2005, opinion of Dr. Lambrechts "to the extent that the Claimant was limited to light work, but greater weight is given to the testimony of Dr. Brendemuehl."  (Tr. at 24.)

The explained that he rejected the opinion of Dr. Newell on the Assessment he completed because

> it is not supported by the credible evidence of record. Furthermore, at the hearing Dr. Brendemuehl testified that the limitations in standing/walking and sitting are not supported by the treatment notes but may be supported based on the claimant's credibility but the undersigned finds that the claimant is not credible.

(Tr. at 24.)

The ALJ stated that he rejected the opinions of Dr. Williams "as they are inconsistent with the evidence of record.  The record supports a basis for the claimant's pain but not to the degree alleged by the claimant.  Furthermore, the finding of disability is an issue reserved for the Commissioner (SSR 96-5p)."  (Tr. at 25.)

Regarding Dr. Thomas, the ALJ explained that he rejected his opinions "as they are inconsistent with the evidence of record. Furthermore, Dr. Thomas did not specify what the claimant could do the other hours in the eight-hour workday.  The finding of disability is an issue reserved for the Commissioner (SSR 96-5p)." (Tr. at 26.)

Finally, as to Claimant's chiropractor, Edward McCormick,

27

D.C., the ALJ gave weight to his opinion

> that the claimant's pain and/or side effects of medications only slightly interfere with the claimant performing tasks requiring sustained attention and concentration to the extent that it is consistent with the claimant still being able to perform routine, repetitive tasks. Furthermore, this limitation was incorporated into the claimant's residual functional capacity, and the vocational expert was still able to name jobs.

(Tr. at 26.)

Claimant's case is one in which there are a number of treating sources, all of whom have had a long term treating relationship with Claimant and have opined that Claimant cannot work due to his fibromyalgia and osteoarthritis. Despite this, the ALJ offers bare boned explanations for rejecting these opinions and does not comply with the regulations cited above, both in providing adequate explanation and in evaluating the opinions using the factors identified in the regulations. Moreover, at one point in her testimony when asked point blank whether the objective evidence provided a basis for limiting Claimant to only being able to work several hours in an eight-hour workday, Dr. Brendemuehl stated "yes" and proceeded to identify the evidence that supported her answer. (Tr. at 786.) While she later muddled her response by falling back on the ALJ's determination about credibility, her initial testimony certainly suggests that her opinion was more consistent with that of Claimant's treating physicians than not.

Furthermore, Claimant's case, involving osteoarthritis and

fibromyalgia and resulting pain certainly rises or falls on Claimant's credibility, but the ALJ rejects some of the above medical opinions because Claimant is not credible. It is one thing to reject Claimant's credibility based on the lack of medical evidence. Indeed, the lack of objective evidence is one of a number of factors to be considered in evaluating Claimant's subjective complaints. 20 C.F.R. § 404.1529(b) (2009); Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 (July 2, 1996). However, it is quite another matter to reject the opinion of the Claimant's treating physician based on the Claimant's lack of credibility, particularly where application of the regulations cited above would suggest a different result. The evidence of record from the treating sources contains objective evidence and treatment notes that offer a longitudinal picture of Claimant's condition, yet the ALJ's decision does not provide an adequate explanation as to how that evidence does not support the opinions of the treating sources about Claimant's limitations nor does the ALJ analyze the treating physician evidence in any depth in keeping with the applicable regulations. In short, the ALJ's reasoning is faulty and not in keeping with applicable regulations.

Furthermore, the ALJ's pain and credibility findings are not consistent with the applicable regulations, case law and SSR and are not supported by substantial evidence. 20 C.F.R. § 404.1529(b) 2009); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater,

76 F.3d 585, 594 (4th Cir. 1996).  As noted above, Claimant's case turns on credibility.  While the ALJ superficially addresses some of the factors identified in the regulation, Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain, precipitating and aggravating factors and Claimant's medication (Tr. at 20-22), the decision contains no substantive explanation as to why the ALJ ultimately found Claimant not credible.  This is particularly problematic given the previous error identified and the fact that at 50 years old, if Claimant is found capable of sedentary work only, he meets Rule 201.14 of the Medical-Vocational Guidelines.  20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1, Rule 201.14 (2009).

Based on the above, remand is in order and the court so proposes.

The court need not reach the remaining arguments raised by the parties.  They can be addressed on remand.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge REVERSE the final decision of the Commissioner, and REMAND this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr.  Pursuant to the provisions of

Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of _de novo_ review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

 December 10, 2010 
           Date

_Mary E. Stanley_
Mary E. Stanley
United States Magistrate Judge